**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NICK TOMASELLO, *et al.*** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 25-2127** |
| | : | |
| **BERMUDIAN SPRINGS AREA SCHOOL DISTRICT** | : | |

**McHUGH, J.** **September 30, 2026**

## MEMORANDUM

This case arises from the tragic death of Jonathan M. Tomasello, a fifteen-year-old boy who committed suicide. His parents, Nick and Natalie Tomasello, attribute his death to bullying at school, and have brought several claims against Bermudian Springs Area School District. Their central claim is for violation of civil rights, rooted in a state-created danger theory. They also allege discrimination under the IDEA, ADA, and Rehabilitation Act, and bring supplemental state law negligence claims. The facts alleged paint a troubling picture of a young man struggling to cope with the often-cruel reality of teenage life, and his parents understandably feel that more could have been done to protect him. But public entities such as schools are protected against civil liability except in very limited circumstances, and Plaintiffs are unable to match the troubling facts of this case with a legally viable theory of recovery. I am therefore constrained to grant the District's motion to dismiss the amended complaint.

### I. Facts as Pled

Plaintiff's Complaint is lengthy. The essential allegations are as follows. During the 2022-2023 school year, Jonathan Tomasello was a high school student in Bermudian Springs School

District. Am. Compl. ¶ 36, ECF 13. Jonathan had an autism diagnosis and as a result had an individualized education plan (IEP). *Id.* at ¶ 29. According to the complaint, decedent was subject to relentless bullying, which the District knew or should have known about. *Id.* at ¶¶ 60-63. These allegations include physical abuse during wrestling and football practice, *id.* at ¶ 37-40, an assistant coach calling decedent a "fat kid," *id.* at ¶ 44, in health class other students calling decedent "fucking dumbass" and "fucking retard," *id.* at ¶ 50-51, and other horrific name-calling including "faggot, cunt, bitch, 'n word', fucker, fattas [sic], twat, autistic retard, [and] shit face," which decedent had written down in connection to him seeking help from school staff, *id.* at ¶¶ 57-60. No investigation resulted from this handwritten note. *Id.* at ¶ 61.

On November 8, 2022, Plaintiffs complained about the bullying of decedent at a meeting of the Bermudian Springs School Board of Directors. *Id.* at ¶ 89. In response, the principal of decedent's middle school called and acknowledged that Plaintiffs' allegations amounted to bullying. *Id.* at ¶¶ 91-93. Around Thanksgiving of 2022, Defendants told Plaintiffs that an investigation would be conducted. *Id.* at ¶ 94. Less than a month before Jonathan's death, Plaintiffs complained to a teacher about bullying, but the teacher claimed decedent had been the "one acting out." *Id.* at ¶ 96. On December 4, 2023, he committed suicide. *Id.* at ¶ 111. After his death, coaches acknowledged in text messages that decedent was bullied and harassed. *Id.* at ¶¶ 117-120.

This action followed. Now pending is Defendant's motion to dismiss the First Amended Complaint, on which the Court heard oral argument in Harrisburg. As set forth below, the motion will be granted.

## II. Standard of Review

Within the Third Circuit, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III. Discussion

### *A. Plaintiff has not stated a claim for violation of substantive due process rights.*

Plaintiff's Section 1983 claim rests on the Due Process Clause of the Fourteenth Amendment, which provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. To state a due process claim under § 1983, a plaintiff "must identify a 'recognized liberty or property interest within the purview of the Fourteenth Amendment and show that they were intentionally or recklessly deprived of that interest, even temporarily, under color of state law.'" *Anspach v. Philadelphia Department of Public Health*, 503 F.3d 256, 262 (3d Cir. 2007) (internal citations omitted). The Supreme Court has held that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 197 (1989). While the Due Process Clause forbids the State from depriving a person of due process of law, "the language itself cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *Id.* at 195. There are two exceptions to this general rule: special relationships and state created danger.

#### *i. No special relationship existed between Defendant and Decedent.*

Plaintiffs argue that there was a special relationship between the Defendants and their son. In special relationship cases the obligation between the State and a party arises "from the

limitation [the State] . . . has imposed on his freedom to act on his own behalf." *Id.* at 200. Writ large, there is no special relationship between a public school and its students. Admittedly, the Third Circuit has not foreclosed "the possibility of a special relationship arising between a *particular* school and *particular* students under certain unique and narrow circumstances." But the circumstances must be so significant "as to forge a different kind of relationship between a student and a school than that which is inherent in the discretion afforded school administrators as part of the school's traditional *in loco parentis* authority or compulsory attendance laws." *Morrow v. Balaski*, 719 F.3d 160, 171 (3d Cir. 2013), as amended (June 14, 2023). A student's mere attendance at a school does not establish a special relationship sufficient to hold a state actor liable for the actions of private citizens under § 1983. The Court of Appeals first reached this conclusion in *D.R. by L.R. v. Middle Bucks Area Vocational Technical School,* 972 F.2d 1364, 1372 (3d Cir. 1992), holding that a school's authority over a student during the school day "cannot be said to create the type of physical custody necessary to bring it within the special relationship noted in *DeShaney*." The Court of Appeals revisited this issue in *Morrow,* and noted a consensus among circuit courts which it found "reinforce[s] our conclusion that public schools, as a general matter, do not have a constitutional duty to protect students from private actors." 719 F.3d at 170.

Plaintiffs argue that "Defendant knew or should have known of the emotionally abusive and otherwise inappropriate behavior of the other students and staff members at the Middle School and High School during Decedent's time as a student at those schools." Am. Compl. ¶ 169, ECF 13. But in *Morrow,* the Third Circuit made clear that although knowledge may be relevant to determining a violation of a duty, it does not create a duty itself: "under *DeShaney,* the Defendants' knowledge—of both the no-contact orders and [the assailant's] threats and conduct—may be

relevant to determining whether the Defendants' conduct was sufficiently egregious to violate a previously existing duty to protect the Morrow children, but that knowledge cannot create a duty that did not otherwise exist." 719 F.3d at 173. Because mere awareness of danger is insufficient to give rise to a constitutional duty to protect, Plaintiffs cannot rely upon a special relationship theory as a basis for a 14th Amendment claim.

***ii. Plaintiffs cannot establish a prima facie case for state created danger.***

In *Bright v. Westmoreland County*, the Third Circuit further refined the state-created danger test, such that a Plaintiff must prove that: 1) the harm was foreseeable and fairly direct; 2) some relationship existed between the state and the plaintiff; 3) a state actor acted with a degree of culpability that shocks the conscience; and 4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or rendered the citizen more vulnerable to danger than had they not acted at all. 443 F.3d 276, 281 (3d Cir. 2006). Each element of this test must be satisfied to establish liability. To establish foreseeability, a plaintiff must show that the defendant was aware of a risk of violence or harm, albeit not that the defendant foresaw the specific circumstances of the harm. *Arnold v. City of Phila.*, 151 F.Supp.3d 568, 576 (E.D. Pa. 2015). Here, it is plausible that a lack of intervention from harsh bullying might foreseeably result in serious harm, and a fully developed record might satisfy the deliberate indifference standard that applies when public officials have time to consider a course of action. *See Sanford v. Stiles*, 456 F.3d 298, 310 (3d Cir. 2006). But Plaintiffs cannot show that it was state action as compared to inaction, a deficit that precludes them from recovery.

"It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Bright*, 443 F.3d at 282. A plaintiff must show both that a state actor affirmatively used their authority to act, and that the act either created a danger or increased the risk of danger to the

plaintiff. Under *DeShaney*, a state actor cannot be liable for failure to protect. "[I]nsofar as Plaintiffs argue that the District failed to follow its bullying policy, this is not the equivalent of an affirmative act under the circumstances." *Bridges ex rel. D.B. v. Scranton School Dist.,* 66 F. Supp. 3d 570, 584 (M.D. Pa. 2014), *aff 'd,* 644 F. App'x 172 (3d Cir. 2016) (en banc). The *Morrow* court observed that the requirement of an actual affirmative act "is not intended to turn on semantics of act and omission. Instead, the requirement serves . . . to distinguish cases where . . . officials might have done more . . . [from] cases where . . . officials created or increased the risk itself." 719 F.3d at 179. Applying that reasoning, it declined "to hold that a school's alleged failure to enforce a disciplinary policy is equivalent to an affirmative act under the circumstances here." *Id.* at 178.

Plaintiff contends that "[i]n context, a coach exercised his authority to bully Jonathan and permitted students to verbally and physically harm Jonathan—an autistic child. It goes without saying that the harm to Jonathan was more severe than if no action was taken." Pl.'s Reply Mot. to Dismiss at 13, ECF 24. But this is the only instance wherein Plaintiff describes action, as opposed to inaction. And even as to this action, it does not allege direct physical harm to Jonathan, but an instance of behavior that might have tacitly encouraged inappropriate conduct by fellow students. *See Beam v. W. Wayne Sch. Dist.,* 165 F. Supp. 3d 200, 213-14 (M.D. Pa. 2016) (questioning whether a student's suicide resulting from failures of teachers and administrators was a sufficiently direct harm under state-created-danger doctrine).

In the final analysis, liability requires an affirmative act that created or materially enhanced Jonathan's peril, and Plaintiffs can point to none.

### B. *Plaintiffs have not stated a claim for interference with the integrity of the family unit*

Plaintiffs also allege that the School District has interfered with their liberty interest in their family. As the Third Circuit has observed, "[c]ourts have recognized the parental liberty interest only where the behavior of the state actor compelled interference in the parent-child relationship." *Anspach ex rel. Anspach v. City of Philadelphia, Dep't of Pub. Health*, 503 F.3d 256, 262 (3d Cir. 2007). There is nothing in the Complaint, which refers only to the District's "action and inaction" with respect to bullying, that pleads the type of "manipulative, coercive, or restraining conduct by the State" the Circuit has identified as essential. *Id.* at 261. Nor are there allegations that the District in any way interfered with decision-making by the parents. *See C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 184 (3d Cir. 2005). Rather, the Complaint focuses exclusively on what happened in the school setting, not within the privacy of the family. Plaintiffs therefore fail to state a claim under this theory of recovery.

### *C. Plaintiff has not stated a claim for Monell liability.*

Plaintiffs separately argue that Bermudian Springs should be held liable for its alleged failure to train staff on how to safely handle bullying. To hold the School District liable for a failure to train claim under Section 1983, Plaintiff must demonstrate that there was a constitutional violation and that the violation was caused by the School District's policy or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). In certain circumstances, dismissal of individual liability also necessitates the dismissal of municipal liability. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006) (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("There cannot be an 'award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm.'"). But in the state-created danger context the Third Circuit requires that district courts independently

evaluate *Monell* liability, notwithstanding a conclusion that there is no individual liability. *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996).

Although a municipality "cannot be held responsible for the acts of its employees under a theory of *respondeat superior* or vicarious liability," it may be held liable where a plaintiff proves that an "action pursuant to official municipal policy" caused their injury. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003); *Monell*, 436 U.S. at 691. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). I agree that the School District's Anti-Bullying Policy constitutes a "policy" or "custom" of the district. *Berg v. County of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000) (internal citation omitted) ("Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict."). But Plaintiffs' claim suffers from multiple deficits.

First, it cannot be said the District's anti-bullying policy represents a failure to "to train certain employees about their legal duty to avoid violating citizens' rights." The purpose of the policy is protection of students, and as discussed above the 14th Amendment does not require governmental officials to protect others from harm inflicted by third parties. Consequently, federal courts have consistently denied *Monnell* claims rooted in such a theory. See *Lansberry v. Altoona Area Sch. Dist.,* 356 F. Supp. 3d 486, 503 (W.D. Pa. 2018) (The "harm caused by student-on-student bullying is not a constitutional harm that Monell protects against."); *Bridges,* 66 F. Supp. 3d at 587; *S.M. v. Lakeland Sch. Dist.,* 148 F. Supp. 2d 542, 550-51 (M.D. Pa. 2001), *aff'd,* 33 Fed. Appx. 635 (3d Cir. 2002).

Even if Plaintiffs identified a protected constitutional interest, the Supreme Court has held that a pattern of similar violations by untrained employees is "ordinarily necessary" to establish a deliberate indifference claim for failure to train. *Connick*, 563 U.S. at 62. Here, Plaintiffs point only to the remarks of an assistant coach and a teacher's comment that Jonathan was the instigator in one incident his parents complained about. Nor is there evidence of a pattern of student suicides in the district or evidence that the policy has failed in the past. *See Sanford v. Stiles*, 456 F.3d 298, 314 (2006). Although *City of Canton v. Harris,* 489 U.S. 378 (1989) recognized that in unique circumstances, a "single-incident" can substitute for showing a pattern, the context there was the use of deadly force, an issue that is materially different in character.

Finally, Plaintiffs face insurmountable problems of causation. In *Connick,* the Supreme Court observed that a "municipality's culpability for deprivation of rights is at its most tenuous where a claim turns on a failure to train." 563 U.S. at 61. Here, Plaintiffs seek to argue that better training of school district staff would have led to better adherence to its anti-bullying policy which in turn would have resulted in better behavior on the part of fellow students, which in turn would have prevented their son from taking his life. The multiple links required to support this chain of inferences demonstrate the problem of establishing causation, as addressed by numerous district courts dismissing similar cases. *See e.g. Beam, supra,* 165 F. Supp. 3d at 213; *Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh,* Civ. No. 15-499, 2016 WL 463787, at *12 (W.D. Pa. Feb. 8, 2016); *Douglas v. Brookville Area Sch. Dist.*, 836 F. Supp. 2d 329, 364 (W.D. Pa. 2011).

Plaintiffs' *Monell* claims will therefore be dismissed.

***D. No remedies for Plaintiffs exist under the IDEA, ADA, and Rehabilitation Act.***

Plaintiffs seek compensatory damages that are not available under the IDEA. *See Chambers ex rel. Chambers v. Sch. Dist. Of Philadelphia Bd. of Educ.*, 587 F.3d 176, 185-86 (3d Cir. 2009) ("Given the Supreme Court's pronouncement in *Burlington* as well as the plain

language and structure of the IDEA, we agree with our sister circuits, and now hold, that compensatory and punitive damages are not an available remedy under the IDEA. That language and structure make plain that Congress intended to ensure that disabled children receive a FAPE under appropriate circumstances, not to create a mechanism for compensating disabled children and their families for their pain and suffering where a FAPE is not provided."). I must therefore dismiss Plaintiffs' IDEA claims for failure to state a claim upon which relief can be granted.

Both Section 504 and Title II of the ADA authorize plaintiffs to seek redress by "bringing suits for injunctive relief or money damages." *A.J.T. by & through A.T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, 605 U.S. 335, 339 (2025). To determine whether such claims remain viable under the Pennsylvania Survival Act first requires an understanding of what damages are recoverable. Punitive damages are not available under either statute. *Barnes v. Gorman,* 536 U.S. 181 (2202). Compensatory damages are recoverable under both, but damages for emotional distress are not. *Cummings v. Premier Rehab Keller*, *P.L.L.C.*, 596 U.S. 212, (2022); *Doherty v. Bice*, 101 F.4th 169, 175 (2d Cir. 2024); *A.W. v. Coweta County School District*, 110 F.4th 1309 (11th Cir. 2024). What remains then are damages of an economic nature, such as educational evaluations or tuition reimbursement, which are not pleaded in this case. Nor, sadly, is compensatory education an option for one who is deceased. Even if Plaintiffs could prove deliberate indifference as required by *Osseo Area Schools*, I am not persuaded that such claims survive the death of the student the statutes were intended to protect, particularly given the remedial nature of these statutes.

These claims must therefore be dismissed. [1]

[1] Plaintiffs also bring claims under the Pennsylvania Human Relations Act. Both Pennsylvania and federal courts have generally construed the PHRA in harmony with the federal statutes it tracks. *See Doe v. Kohn Nast &*

### *E. Plaintiffs' wrongful death and survival actions are barred.*

Plaintiffs' Complaint can also be construed as asserting common law negligence claims. Under the Pennsylvania Political Subdivision Torts Claim Act, school districts are given broad tort immunity. The Act establishes that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. Cons. Stat. § 8541. There are nine acts excepted from immunity granted under § 8541, but none apply here. *See id.* § 8542. Individual school district employees, none of whom are named here, would also be immune from liability to the same extent as their employer, if they act within the scope of their employment, *id.* at § 8545 and deprived of immunity only if they acted with "actual malice" or "willful misconduct." *Id.* at § 8550. Consequently, to the extent that Plaintiffs seek to advance negligence claims through wrongful death and survival actions, the District is immune.

## IV. Conclusion

The Court is mindful of the tragic loss suffered by this family and commends their efforts to focus public attention on the problem of school bullying and the need for better methods of protecting students, particularly for vulnerable students such as Jonathan. But as noted at the outset, the law provides substantial protection to public entities. For the reasons set forth above, Defendants' Motion to Dismiss will be granted, with leave to amend denied. When confronted with the District's first motion, Plaintiffs exercised their right to amend, but that amendment was insufficient to overcome the deficits in the Complaint. During oral argument, counsel did not make a persuasive argument that discovery might change the outcome. The core problems Plaintiffs face

---

*Graf,* 862 F.Supp. 1310, 1323 (E.D.Pa.1994); *Kelly v. Drexel Univ.,* 907 F. Supp. 864, 871 (E.D. Pa. 1995), aff'd, 94 F.3d 102 (3d Cir. 1996); Chmill v. City of Pittsburgh, 488 Pa. 470, 412 A.2d 860, 871 (1980).

are conceptual, not factual, as many courts have analyzed the issues presented by this case and consistently denied relief. On that basis, I conclude that leave to amend would be futile.

An appropriate order follows.

s/Gerald Austin McHugh
United States District Judge